**Fulmer v. Reading Mutual Insurance Co.**

*James R. Wishchuk,* of *Frank & Frank,* for plaintiff.

*Wallace H. Webster, Jr.,* of *Perkin, Webster & Christie,* for defendant.

DAVISON, J., October 9, 1973.—This action in assumpsit comes before the court on plaintiff's motion for summary judgment. Admissions in the pleadings and an affidavit in support of plaintiff's motion for summary judgment establish a number of facts.

On January 15, 1972, plaintiff entered into an agreement to purchase a certain parcel of ground containing a barn thereon from Milton F. Danner and Verna M. Danner. The vendors continued to maintain in effect their fire insurance policy with defendant, Reading Mutual Insurance Company, insuring the barn for the face amount of $7,500. At or about the date of execution of the agreement of sale, plaintiff obtained a separate fire insurance policy from Erie Insurance Exchange in the face amount of $10,000.

Prior to closing the title, the barn was totally destroyed by fire on February 4, 1972. Defendant, according to exhibit 2 of its answer, determined the amount of the loss to be $20,045.65. Some time thereafter, the vendors conveyed the parcel containing the barn to plaintiff and assigned to plaintiff whatever right they had to the proceeds of their fire insurance policy with defendant.

Plaintiff demanded and received from Erie the $10,000 face amount of the Erie policy. Neither the terms of that policy nor what transpired with respect to that policy have been made known to the court. Here, plaintiff, as assignee, seeks the $7,500 face amount of the policy with defendant. While defendant is willing to pay what it has by proration determined

to be the limit of its liability, the sum of $5,727.33, it refuses to pay the entire $7,500.

The posture of this controversy presents two issues for consideration. The first is whether or not this is a proper case for entry of summary judgment and, secondly, to what sum a vendee is entitled, where, following a binding agreement of sale, a fire loss occurs prior to closing, when the property was insured by both the vendor and vendee and the amount of the loss exceeds the total amount of the policies.

It is clear that summary judgment is available under Pennsylvania Rule of Civil Procedure 1035, and we need not dwell at length thereon.

We next turn to the substantive and determinative question raised. Plaintiff argues that as vendee he insured his equitable interest and that such was a separate and distinct insurable interest different from that insured by the vendor; thus, he should be permitted full recovery against defendant despite receiving full payment of the Erie policy, because the loss exceeded the amount of both policies. Reading Mutual's policy provides, in part:

"This Company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not."

Plaintiff argues that the term "whole insurance" means insurance covering the same insured, same subject matter and the same interest, in essence, "double insurance." He relies on Vogel v. Northern Assurance Company, 219 F.2d 409 (1955).

In Vogel, the United States District Court for the Eastern District of Pennsylvania, in applying Pennsylvania law, held that where a purchaser under agreement to buy realty had obtained a $9,000 fire insurance policy to protect his interest as equitable owner, and

the vendor had procured a $6,000 policy to protect his interest, and a fire loss in the sum of $12,000 occurred before the conveyance was consummated, the purchaser, after completing the acquisition and receiving title and an assignment from the vendor of his rights under his policy, was entitled to recover the full $15,000 from the insurers. Vogel, therefore, required both carriers to pay the full amount of the policies.

Defendant takes the position that its policy limits its liability to pro rata payment of the loss and relies heavily on Insurance Company of North America v. Alberstadt, 383 Pa. 556, 119 A.2d 83 (1956).

Alberstadt was a declaratory judgment proceeding to determine the obligations of two insurance companies under fire insurance policies issued by them and the respective rights of the parties insured thereby.

The property there was sold at tax sale and the successful bidder four days thereafter obtained fire insurance coverage in the amount of $2,500. The debtor's fire insurance policy in the amount of $3,500 continued in effect at the time of the sale. A fire occurred prior to the purchaser paying the balance of the bid to the sheriff and delivery of deed. The full amount of the loss was $3,175. The debtor demanded the full amount of the loss from her carrier and the purchaser demanded from his carrier the full amount of his policy, which was less than the amount of the loss.

In Alberstadt, the entire amount of the loss could have been compensated fully from the proceeds of the debtor's fire insurance policy alone. In the instant case, the vendor's policy was for $7,500 and plaintiff's coverage in the amount of $10,000; therefore, and significantly, permitting plaintiff to recover the full amount of both policies will leave him in a position

of still not being fully compensated for the amount of the loss as determined by defendant to be $20,045.65.

The lower court apparently on the strength of Vogel entered judgment against both insurance carriers for the full amount of the coverage. Its opinion recognized the existence of separate insurable interests by the vendor and the vendee thereby ruling out the "pro rata liability" clause which it ruled applied only where there was "double insurance."

The Supreme Court reversed the decision of the court below, holding that the purchaser was entitled to receive the amount of the loss actually sustained by reason of the fire and ruled that the responsibility of the insurance companies would be limited to their pro rata apportionment of the loss.

The court first determined that the debtor who still retained legal title to the property at the time of the fire was entitled under the terms of her policy to recover from her company the amount of the damage to the property:

"Since Alberstadt, at the time of the fire, still retained the legal title to the property, she was entitled, under the terms of her policy, to recover from Empire Company the amount of the damage to the property caused by the fire, namely, $3,175; Empire Company could not take advantage of the fact, as far as its relations with Alberstadt were concerned, that the equitable title had passed to Patterson, that being a circumstance which affected only the relations between Alberstadt and Patterson. State Mutual Fire Insurance Co. v. Updegraff, 21 Pa. 513; Reed v. Lukens, 44 Pa. 200; Dubin Paper Co. v. Insurance Co. of North America, 361 Pa. 68, 63 A.2d 85, 8 A.L.R. 2d 1393; Heidisch v. Globe & Republic Insurance Co. of America, 368 Pa. 602, 84 A.2d 566, 29 A.L.R.2d 884; Vogel v. Northern Assurance Co., 3 Cir., 219 F.2d 409."

However, Chief Justice Horace Stern, speaking for the court, concluded that the debtor would not be permitted to retain the proceeds of the loss:

"In short, the law will not suffer Alberstadt to retain any portion of the $3,175 merely because of a right of redemption which she did not exercise and thereby enable her to profit by a recovery which represented no loss whatever to her but, instead, one that was really suffered by Patterson as the equitable owner of the property when the fire occurred and subsequently the legal owner thereof."

The court thus treated the debtor as trustee for the buyer. Applying that reasoning to the case before the court, the vendors, had they not made an assignment, would have been entitled to recover $7,500 from defendant and been deemed trustees thereof for plaintiff.

The court then proceeded to make a determination as to the amount of the recovery:

"Since fire insurance is only a contract of indemnity and its object is not to permit a gain by the insured but only to compensate him for a loss, it is obvious that *he cannot recover insurance in an amount greater than the loss which he sustained.* If he himself had had policies in these two insurance companies he could not, of course, have collected from either or both of them *more than the amount of the damage occasioned by the fire,* and the companies, under the pro rata clauses of their policies would have been entitled to prorate the loss. It is true that, ordinarily, double insurance occurs only when the assured makes two or more insurances on the same subject, the same risk, and the same interest. Vrabel v. Scholler, 369 Pa. 235, 243, 85 A.2d 858, 862; Yanko v. Standard Fire Insurance Co., 31 Pa. Super. 1; Swoope v. United States Fire Insurance Co., 87 Pa. Super. 349, 352. Here,

however, virtually the same situation exists, because if Patterson were allowed recovery of the proceeds of both policies he would likewise be enjoying the fruit of two insurances on the same subject, the same risk, and the same interest, namely his own, and in an amount greater than his actual loss, which, as already stated, the law will not permit. His recovery is limited, therefore, to the sum of $3,175 which will be paid by the insurance companies in the proportion of the amounts of their respective policies of $3,500 and $2,500.

"This determination of the rights and obligations of the parties is not only in accord with applicable legal principles but accomplishes a just result in that Patterson will recover the amount of the loss actually sustained by him while Alberstadt will receive nothing because in reality she sustained no loss whatever by the fire; the liability of the two insurance companies will properly be limited to the amount of the damage occasioned by the fire, cf. Dunsmore v. Franklin Fire Insurance Co., 299 Pa. 86, 149 A. 163, and they will prorate their respective liabilities therefor in accordance with the terms of their policies." (Italics supplied.)

We construe Alberstadt to stand for the proposition that a person may not recover an amount greater than the loss which he sustained. To limit in the instant case plaintiff's measure of damages to defendant's pro rata share would deprive plaintiff from the amount to which he is entitled, as the total of both policies is still less than the amount of the loss. Plaintiff will not be unjustly enriched by receiving the full proceeds of defendant's policy. Moreover, defendant has enjoyed receiving premiums from the inception of the policy.

While, at first glance, it might appear that Alberstadt, as defendant suggests, overruled Vogel, we agree

with plaintiff that the cases are consistent. Moreover, the court in Alberstadt cited Vogel with approval.

Accordingly, we believe that plaintiff is entitled to recover the full face value of the policy in question.

ORDER

Now, October 9, 1973, it is ordered that judgment in the above-captioned action be and the same is hereby entered in favor of plaintiff and against defendant in the sum of $7,500, together with interest thereon from February 4, 1972.