AMERICAN HOME ASSURANCE
COMPANY, Plaintiff,

v.

MERCK & CO. INC., Defendant,

v.

A.I. Marine Adjusters, Counterclaim
Defendant.

No. 03 Civ. 3850(VM).

United States District Court,
S.D. New York.

July 12, 2005.

John Nicotetti, Nooshin Namazi, Nicoletti, Hornig, Campise & Sweeney, New York City, for American Home Assurance Co.

Jerold Oshinsky, Joseph F. Fields, Paul C. Sullivan, Dickstein, Shapiro, Morin & Oshinsky, LLP, New York City, for Merck & Co., Inc.

Anthony J. Pruzinsky, Hill, Rivkins and Hayden, LLP, New York City, for A.I. Marine Adjusters, Inc.

*DECISION AND ORDER*

MARRERO, District Judge.

## I. BACKGROUND

Merck & Co., Inc. ("Merck") has filed objections ("Objections") to a Report and Recommendation ("Report") issued by Magistrate Judge James C. Francis IV on April 13, 2005, and available in redacted form as *American Home Assur. Co. v. Merck & Co., Inc.*, No. 03 Civ. 3850, 2005 WL 1153723 (S.D.N.Y. Apr.13, 2005). That Report, which is incorporated hereto, found that neither Merck nor American Home Assurance Company ("American Home") was entitled to partial summary judgment on the interpretation of the valuation clause of a transit insurance policy (the "Transit Policy"), and ordered that Merck provide American Home with cost and profit information on two chemicals, sodium alendronate and rofecoxib, that were allegedly damaged in transit and for which Merck has submitted insurance claims.

The Court has conducted a *de novo* review of all portions of the Report to which Merck has objected, pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b), and has concluded that Merck's objections are without merit. The Report correctly concluded that the valuation clause is ambiguous, as each party's construction of the clause, while plausible, is not the only reasonable reading of the policy.

The Report clearly and concisely explains why, under Pennsylvania law, Merck's proposed interpretation of the valuation clause is not compelled by the language of the clause or by extrinsic evidence such as dictionary definitions that courts may use as interpretive aids. The Court finds most persuasive Pennsylvania law's command that "[t]he fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties." *Ferrer v. Trustees of University of Pennsylvania,* 573 Pa. 310, 825 A.2d 591, 608 (2002). Based on the record currently before the Court, it is highly unlikely that American Home intended to give Merck a windfall whenever chemicals were shipped between Merck subsidiaries using priced invoices. This would appear to be the effect of adopting Merck's proposed interpretation of the valuation clause, which would allow Merck to unilaterally set prices for intra-company chemical shipments that may bear no relation to the actual cost or market price of the chemicals, and then to recover that potentially wholly artificial invoice price, plus 10 percent, from American Home whenever those chemicals are damaged during shipment. Such recovery would appear to run contrary to basic principles governing the Transit Policy, whose "object is not to permit a gain by the insured but only to compensate [it] for a loss." *Insurance Co. of North America v. Alberstadt,* 383 Pa. 556, 119 A.2d 83, 86 (1956).

Of course, this principle would not preclude Merck from endeavoring to prove at trial that American Home *did* agree to allow Merck to unilaterally set the prices at which it would be compensated for loss of intra-company shipments, either under the section of the valuation clause governing property sold on the basis of a commercial invoice or under the section of the clause governing unfinished goods valued "as agreed at time and place of loss." In this connection, relevant extrinsic evidence includes the testimony of a manager with American Home's claims adjuster and American Home's response to a contention interrogatory related to a claim not at issue in the instant motion.[1] Also pertinent are the dictionary definitions relied upon by Merck, although they are not dispositive in resolving the dispute between the parties.

Merck's objections to producing the cost and profit information requested by American Home are similarly without merit. Even if the requested information is highly sensitive to Merck, it is being produced to a noncompeting entity subject to a stringent confidentiality order governing the exchange of information between the parties. This information will be directly relevant to determining a proper valuation of Merck's claims if American Home's interpretation of the valuation clause ultimately prevails at trial. Consequently, Merck should be required to produce the requested information.

## II. *ORDER*

For the reasons discussed above, it is hereby:

**ORDERED** that the motions for partial summary judgment filed by Merck & Co., Inc. ("Merck") and American Home Assurance Company ("American Home") with respect to the interpretation of the valua-

---

1. According to American Home and as undisputed by Merck, the interrogatory response relied upon by Merck relates to a commercial transaction between Merck and a third-party purchaser. Thus, even if American Home's interrogatory response constitutes a "judicial admission" related to that claim, it cannot estop American Home from arguing that Merck is not entitled to invoice price plus 10 percent on all intra-company shipments.

tion clause of the transit policy at issue in this case are DENIED; and it is further

**ORDERED** that Merck shall produce, by no later than August 12, 2005, the cost and profit information related to sodium alendrolate and rofecoxib requested by American Home.

**SO ORDERED.**