**MISSION NATIONAL
INSURANCE COMPANY**

v.

**HARTFORD FIRE
INSURANCE COMPANY.**

**Civ. A. No. 85–6867.**

United States District Court,
E.D. Pennsylvania.

Jan. 9, 1989.

Cozen, Begier & O'Connor, Ronald B. Hamilton, Philadelphia, Pa., for plaintiff.

Sweeney, Sheehan & Spencer, Thomas L. Delevie and Christopher P. Leise, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

DITTER, District Judge.

This declaratory judgment action concerns a dispute between two insurers as to their respective liabilities with regard to the destruction by fire of a construction site. Presently before me are the motion for summary judgment of defendant, Hartford Insurance Company, the company that insured the building contractor, and the cross-motion for partial summary judgment of plaintiff, Mission National Insurance Company, the company that insured the property owner.

On November 10, 1983, Mission issued an "all-risk" policy covering all real and personal property to Diversifoods, Inc.[1] Diversifoods, thereafter, on June 1, 1984, entered into a contract with Dean Management, Inc. (DMI) for the construction of a "Luther's Bar–B–Q Restaurant" on property owned by Diversifoods in Mentor, Ohio. On July 1, 1984, DMI obtained a "builders' risk" policy from Hartford covering the buildings under construction at the Luther's construction site.[2] On May 13, 1985, the Luther's construction project was destroyed by fire.

Diversifoods submitted a claim to Mission for its damages which Mission paid.[3] Mission then requested that Hartford participate in an adjustment and payment of the loss sustained to Diversifoods' property. Hartford, disclaiming liability under the policy issued to its insured, DMI, refused. Mission thereupon brought this action seeking a declaration that the policy of insurance issued by Hartford to DMI was in effect at the time of the fire and provides coverage for the damage to Luther's. Further, Mission seeks a declaration that the policy issued by Hartford to DMI is primary to the policy issued by Mission to Diversifoods.

In opposing Mission's motion for summary judgment, Hartford contends that Mission has no right to proceed against it to recover under the policy it issued to DMI. Any right that Mission might have, Hartford argues, arises only by way of subrogation to the rights of its insured, Diversifoods. Since Diversifoods is not a named insured under the Hartford policy, and since the construction contract between Diversifoods and DMI, in any event, acts to bar any recovery Diversifoods might seek against DMI, Hartford contends that Mission can have no recovery against it for any damage Mission's insured, Diversifoods, suffered. In a letter brief to the court, however, Mission states that its claim is "not pursuant to any subrogation entitlement which it has, nor is it pursuant to any assignment which it has taken from its insured." According to Mission, its complaint is one "for a declaratory judgment asking this court to interpret the terms and conditions of two policies of insurance and declare whether they both provided insurance coverage for the damages sustained at the Luther's Bar–B–Que Restaurant ... and, if so, whether the Hart-

---

1. The Mission policy provides coverage to Diversifoods for:

   The interest of the Assured in all property of every description owned or used by the Assured or hereafter erected, installed or acquired including while in the course of construction or erection.

   It further provides coverage for:

   The interest of contractors in new buildings or structures being built for the Assured while in the course of construction and when completed and any additions, alterations or repairs to the existing buildings and structures of the Assured.

2. The Hartford policy provides coverage to DMI for:

   A. The building(s) or structure(s) described herein while in the course of construction, erection, fabrication, repair or completion, including foundations, additions, attachments and all permanent fixtures belonging to and forming a part of said building(s) or structure(s).

   B. Temporary structure(s), materials, equipment and supplies of all kinds pertaining to the work being performed while at the job site; excavation, site preparation, landscaping and similar work provided that the value thereof is included in the amount insured and then only to the extent that replacement is made necessary to complete the project.

   C. Materials, equipment and supplies of all kinds pertaining to the work being performed, while the property is in transit.

3. Because the Mission policy had an aggregate deductible of $200,000, the total damages sustained by Diversifoods were not compensated.

ford policy was primary or concurrent." Although not clear from its complaint, what Mission seeks is contribution from Hartford as an insurer of the same property which Mission insured under its policy to Diversifoods. Having paid its insured, Mission seeks to proceed against Hartford to recoup a portion of the payment it made to Diversifoods.[4]

With regard to an insurer's right to contribution, the Third Circuit has noted:

The right to contribution is predicated upon the principle that all insurers are equally liable for the discharge of a common obligation, and arises even though, for the obligation involved, the sureties are bound by separate instruments. The principle of contribution assumes the existence of two or more valid contracts of insurance covering the particular loss and the particular casualty in question.

*Commercial Union Ins. v. Bituminous Cas. Corp.*, 851 F.2d 98, 101 (3d Cir.1988) (quoting Couch on Insurance 2d § 62:151 (1983)). *See Commercial Cas. Ins. Co. v. Knutsen Motor Co.*, 36 Ohio App. 241, 173 N.E. 241 (1930) (where two companies insure the same risk and one is compelled to pay the total loss, it is entitled to contribution from the other for the amount of its proportionate share). For an insurer to be entitled to contribution from another insurer, the policies in question must insure the same property, the same interest, and the same risk. *Reliance Ins. Co. v. Allstate Indem. Co.*, 514 F.Supp. 486, 487 (E.D.Pa. 1981), *aff'd*, 681 F.2d 808 (3d Cir.1982). Mission's attempt to seek contribution from Hartford assumes that the policies cover the same interests. Although separate policies purport to be excess as to each other, it is only when the insured interests are the same in each that the "other insurance" provisions apply to determine which policy is primary and which policy is excess. *Commercial Union*, 851 F.2d at 103. Here, although the two policies cover the same property and the same risk, they do

not cover the same interests. The Mission policy covers the interest of Diversifoods as owner of the Luther's construction site and also insures the interest of DMI as a contractor at the site. The Hartford policy, on the other hand, insures only DMI's interest as contractor in the buildings under construction at the Luther's site. Diversifoods is not named in the Hartford policy and its interest is not encompassed within the coverage of the policy. The two policies clearly cover different insureds and clearly protect two different insurable interests. Mission is, therefore, not entitled to contribution from Hartford for the loss suffered by Diversifoods. *See Peerless Ins. Co. v. Bailey Mortgage Co.*, 345 F.2d 14 (5th Cir.1965) (proration of liability under contract of insurance is not available where the other insurance on the property is obtained by another party on a separate and distinct insurable interest); *St. Paul Fire and Marine Ins. Co. v. Protection Mutual Ins. Co.*, 607 F.Supp. 388 (S.D.N.Y. 1985) (landlord's insurer could not obtain contribution from tenant's insurer because policies covered different insureds and different insurable interests); *Reliance Ins. Co.*, 514 F.Supp. at 487 (buyer and seller have separable insurable interests and seller's insurer, therefore, could not compel buyer's insurer to contribute to seller's loss).

Regardless of its right to contribution, Mission could proceed against Hartford should it demonstrate a right of subrogation derived from its insured, Diversifoods. Article 11.3.1 of the standard American Institute of Architects (AIA) agreement between Diversifoods and DMI provides:

Unless otherwise provided, the Owner shall purchase and maintain property insurance upon the entire Work at the site to the full insurable value thereof. This insurance shall include the interest of the Owner, the Contractor, Subcontractors,

**4.** Neither party has addressed which state's law should govern the question of Mission's right, if any, to subrogation or contribution. However, since the parties seem to have done so and since I have been shown no reason to do otherwise, I

will assume that the law of Ohio governs the question of Mission's right to subrogation or contribution but that this law differs little from other state's general law with regard to these issues.

and sub-subcontractors in the Work and shall insure against the perils of fire and extended coverage and shall include "all risk" insurance for physical loss or damage including without duplication of coverage, theft, vandalism and malicious mischief.

Article 11.3.6 provides that:

The Owner and Contractor waive all rights against (1) each other and the subcontractors, sub-subcontractors, agents and employees each of (sic) the other, and (2) the Architect and separate contractors, if any, and their subcontractors, sub-subcontractors, agents and employees for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to the Paragraph 11.3 or any other property insurance applicable to the work ...

Based on these provisions, Hartford argues that Mission has no subrogation right derivative from its insured and, therefore, cannot proceed by way of subrogation against it. I agree. In *Commercial Union*, the Third Circuit considered a case involving facts similar to the one before me. In that case, an owner of a shopping center development and a contractor entered into a similar AIA agreement. 851 F.2d at 100. The owner obtained an "all risk" policy on the construction site and one of the subcontractors obtained specific peril coverage for a one-story building that it was constructing. *Id.* After the destruction of the building, the owner's insurer paid its insured and brought a declaratory judgment action against the subcontrac-

tor's insurer seeking a declaration that the insurer was liable for contribution or indemnity for the loss. *Id.* Considering the nature of the right to subrogation under New Jersey law and construing the AIA agreement before it, the Third Circuit concluded that the contract "operates to shift to the owner the ultimate risk of loss which is then transferred to the insurer for valuable consideration, leaving the insurer no right to proceed by subrogation against a subcontractor with respect to property loss." *Id.* at 101. The effect of article 11.3.6, thus, was effectively to abrogate any subrogation right of the owner's insurer against the subcontractor or its insurer. *Id.*

■ I have uncovered no case law to suggest that the nature of the right to subrogation in Ohio is in anyway different than the nature of the right in New Jersey. I, thus, find the analysis in *Commercial Union* to be persuasive, particularly since the provisions in the AIA agreement are the same in both cases.[5] Therefore, I conclude that the provisions of the construction contract between Diversifoods and DMI abrogate any subrogation right of Mission against Hartford.[6] Since Mission has no right to subrogation or contribution against Hartford, I will grant Hartford's motion for summary judgment and deny Mission's motion for partial summary judgment.

---

[5]. The fact that, in this case, the owner's insurer seeks to proceed against the insurer of a contractor rather than the insurer of a subcontractor as was the case in *Commercial Union* is of no moment since the provisions of the AIA agreement apply to contractors and subcontractors alike.

[6]. Even were there no waiver provision in the construction contract, the fact that Mission insured DMI's interest under the policy it issued to Diversifoods would bar its subrogation right against Hartford. Where there are two insureds under a contract and the insurer pays one insured the amount claimed as damages, no right of subrogation arises against a person who holds the status of an additional insured. *Dow Chemical C. v. M/V Roberta Tabor*, 815 F.2d

1037, 1043 (5th Cir.1987). An insurer cannot pay its insured for losses sustained and then seek to recover from a contractor who is named directly or indirectly as an additional insured in the same policy. *Keystone Paper Converters, Inc. v. Neemar, Inc.*, 562 F.Supp. 1046, 1050 (E.D.Pa.1983). Under the policy Mission issued to Diversifoods, DMI had an insurable interest in the buildings under construction sufficient to qualify it as an additional insured, a fact which counsel for Mission conceded at oral argument. Having paid Diversifoods, its insured, Mission cannot proceed by way of subrogation to sue a co-insured. *See South Tippecanoe School Building Corp. v. Shambaugh & Son, Inc.*, 182 Ind. App. 350, 395 N.E.2d 320 (1979).